The **OWENSBORO NATIONAL BANK,**
**Appellant,**

v.

**DEPARTMENT OF REVENUE of the Commonwealth of Kentucky et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 24, 1965.

Ridley M. Sandidge (Sandidge, Holbrook, Craig & Hager), Owensboro, for appellant.

Robert Matthews, Atty. Gen., Wm. S. Riley, Asst. Atty. Gen., Larry A. Carver, Robert J. Reickhoff, Dept. of Revenue, Frankfort, Henry M. Griffin, Owensboro, for appellee.

DAVIS, Commissioner.

The appellant bank challenges the legality of the formula used in evaluating the bank's stock for ad valorem tax purposes. KRS 136.280(2). The assessment involved is for the tax year 1963, so that all matters arose and were adjudicated below prior to our decision in Russman v. Luckett, Ky., 391 S.W.2d 694.

Fundamentally, two challenges of the evaluation process were made by appellant: (1) It was not appropriate for the assessor to compute the aggregate value of the bank's assets by including the 100% cash value of its real estate among the gross assets, followed by adjustment of the gross value of all assets by subtraction of the lower *assessed* value of the real estate, and (2) the value of the shares (after deducting the 100% value of the real estate) should have been equalized with all tangible property in Daviess County by using only 35% of its true value. The trial court determined these points adversely to appellant, hence this appeal.

Determination of the issues requires construction of KRS 136.270, 136.280, and certain other related statutory provisions.

█ KRS 136.270(1) imposes an "annual tax of fifty cents on each one hundred dollars of their fair cash value" on the shares of stock of state and national banks doing business in Kentucky. The statute requires that the tax shall be paid by the bank "on behalf of the owners of the shares of stock." Other subsections of KRS 136.270 provide for local taxes on such stock at a rate of twenty cents for the county and city, respectively, and at a rate of forty cents for the school district in which the bank is located. Before us is the levy as respects the state and county taxes, or an aggregate of seventy cents per hundred dollars of evaluation. It has been adjudicated, and the parties recognize, that the tax is one upon the stockholders, not on the bank. Board of Supervisors of City of Frankfort v. State Na-

tional Bank of Frankfort, 300 Ky. 620, 189 S.W.2d 942.

KRS 136.280(1) requires each bank to make an annual report to the Department of Revenue and to the assessing officer of the county, city or taxing district in which it is located. The statute enumerates the details of information required to be furnished in the report. Among the matters to be reported is the value of all tangible property located in this state.

KRS 136.280(2) provides that the assessing officer of the county, city or taxing district in which the bank is situated shall assess its shares for taxation for state, county, city and taxing district purposes. This section further provides: "Each bank and trust company may have deducted from the total valuation placed on its shares the assessed value of its tangible property in this state."

KRS 136.280(3) requires the bank to list its tangible property with the assessing officer, who is then to "make out and return the assessment to the proper authorities of the county and city" in the manner and at the time provided for the returns of assessments for personal property therein.

KRS 136.280(4) provides:

"The equalization, collection, penalties and laws relating thereto provided for other personal property in the county, city or taxing district shall apply to the collection of the taxes provided for in this section. Any county, city or taxing district may collect such taxes by suit."

The appellant insists that the rationale of Luckett v. Tennessee Gas Transmission Co., Ky., 331 S.W.2d 879, controls this case and impels a result contrary to that reached below. We are unable to accept this contention. In Luckett it was held that for purposes of a *franchise* tax, on the corporation—as opposed to an ad valorem tax on the bank stock in this case—the

100% value of tangible property must be deducted from the 100% value of the allocable capital stock. The true basis for that opinion rests in the fact that use of the "assessed" value (less than 100% cash value) for the tangible property, when subtracting the tangible value from the allocable stock value, resulted in imposing more than 100% value on the allocable stock.

But the reasons for the Luckett decision are not present in the case at bar. Here the tax is not on the bank, but on the stockholders. We think there may be no doubt that the legislature could have imposed a tax on the bank stock at its fair cash value, without any provision for deducting anything for the value of the bank's tangible property. Indeed, the tax as imposed by KRS 136.270 *is* a tax on the "fair cash value" of the shares of stock. The assessing officer is directed to assess the shares of the bank, and, we think as a matter of grace only, it is provided that the "assessed" value of the tangible property of the bank may be deducted from the total valuation placed on all the shares.

See Board of Sup'rs of City of Frankfort v. State National Bank of Frankfort, 300 Ky. 620, 189 S.W.2d 942, for a full discussion of the factors to be considered in determining the fair cash value of bank stock under KRS 136.270(1). It is to be observed that the determination of the fair cash value in the present case was based upon a formula, in which various factors were considered. But as is pointed out in the State National Bank of Frankfort opinion, just mentioned, it is appropriate to determine the fair cash value of the bank stock on actual sales of the stock, coupled with considerations of other elements entering into fair market value of the shares. In the cited case, the "book" value, according to the assessing officer,

was $228.62 per share, but the court found that the fair cash value was only $120 per share. It is apparent, therefore, that the fair cash value of bank stock is not controlled by mere addition of the value of the bank's assets—whether they be the 100% cash value of tangible property, or various other assets, including good will, et cetera.

Thus, we return to consider the meaning of KRS 136.280(2) in its employment of the language: "Each bank and each trust company may have deducted from the total valuation placed on its shares the assessed value of its tangible property in this state." Under long usage in Kentucky "assessed value" has come to have a meaning substantially different from "fair cash value." Russman v. Luckett, Ky., 391 S.W.2d 694. Since it is our view that the legislature need not have provided for any deduction from the "fair cash value" of the bank stock, we have little difficulty in concluding that the shareholders (and the bank in their behalf) are without basis for complaint merely because the largess of the legislature is less than it might have been.[1] Therefore, we conclude that the trial court correctly determined that appellant had no right to have the 100% cash value of its tangible property deducted from the value of the shares.

Our conclusion is strongly buttressed when we look to the facts as stipulated in the record. It is shown that the appellant bank's stock is comprised of 50,000 shares; there were nine sales of the stock during the pertinent year, in which 264½ shares of the stock were transferred. The sales ranged from a high of $53 to a low of $48 per share. The "weighted" average price as shown on the report form was at $51.85 per share. However, the ultimate value at which the stock was assessed, and upon which the tax was computed, was at a rate slightly in excess of $46.50 per share. The

---

[1]. Ky.Const., Sec. 172, requires taxation of all property, not exempted from taxation by the Constitution, at its fair cash value; although the question is not argued, grave doubt exists whether the claimed statutory exclusion of tangible property value from the fair cash value of the bank stock would be constitutional.

appellant does not contend—a..d obviously it could not—that the assessment is at a sum greater than the fair cash value of the stock. There is no challenge made here of the propriety of using the formula, and we express no opinion as to its legality. We are convinced, however, that under the showing in this record there is no basis upon which appellant may reasonably assert that the assessment exceeds the fair cash value of the stock.

There remains for discussion and resolution the question whether the ultimate value of the shares of stock must be "equalized" with other personal property in Daviess County. It is shown that 35% of fair cash value was the "equalization rate" for other personal property in Daviess County for the pertinent period. Although it is recognized that intangible property is assessed at 100% value, as noted in Kentucky Finance Co. v. McCord, Ky., 290 S.W.2d 481, it is argued that bank stock is different, since it is the only intangible which is assessed at the local level. Thus, it is reasoned, as the language of KRS 136.280(4) provides that "The *equalization,* collection, penalties and laws relating thereto provided for *other personal property* * * * (Emphasis supplied)" in the taxing district shall apply, it must mean that the 35% rate prevailing in Daviess County for "other personal property" is to be applied to bank stock. We regard this argument as ingenious, but not convincing.

It would require placing inordinate significance upon the word "equalization" to reach the result urged by appellant. Particularly is this true in face of the explicit language of the statute (KRS 136.270(1)) which levies the tax on the bank stock at its fair cash value. Moreover, to adopt such a construction would require the assumption that the legislature specifically directed the assessing officer to violate Kentucky Constitution Section 172. We think that we would deviate from reason and settled rules of statutory construction to adopt the strained view advanced by appellant.

Appellees present a procedural challenge to appellant's right to maintain this action, based on the premise that appellant is not the real party in interest within the purview of CR 17.01. We think there are at least three reasons demonstrating the lack of merit in the contention: (1) the bank is a real party in interest, because the statute lays upon it the duties of reporting assets for the ascertainment of the amount of tax due and the actual payment of the tax, albeit on behalf of the stockholders; (2) the "real party in interest" point was effectively waived when appellee failed to raise the defense until August 5, 1964, although it had filed its answer in circuit court on April 8, 1964, CR 12.08; (3) no cross-appeal has been perfected by the appellees, so the point is not properly preserved for appellate review. CR 74. The failure to raise the point upon cross-appeal, following a specific adverse ruling by the circuit court, precludes appellate review of the question. Johnson v. Chavies Coal Co., Ky., 299 S.W.2d 629.

The judgment is affirmed.