## Talbott, Auditor of Public Accounts, v. Urquhart's Executors.

(Decided June 23, 1933.)

144

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellant.

MORRIS & JONES, JOHN FARMER and TRABUE, DOOLAN, HELM & HELM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Mrs. Ira A. Urquhart died on March 19, 1930, domiciled in Richmond, Va. The appellees, First & Merchants' National Bank of Richmond, and W. Hill Urquhart, were appointed joint representatives of her estate, and they qualified as such in the proper Virginia court. Among the assets of the estate of the decedent were 250 shares of the Louisville & Nashville Railroad Company, a Kentucky corporation, of the agreed value of $27,470, and which was the price fixed by the state tax commission of Kentucky for inheritance tax purposes under the provisions of article 19 of chapter 108 of the 1930 Edition of Carroll's Kentucky Statutes, relating to "Revenue and Taxation." Section 4281a-8 of the same edition of the Statutes was enacted in 1924, and at the time of the transactions herein involved in had not been declared unconstitutional and illegal, but which has since been done by this court in the cases of Zahn's Ex'r v. State Tax Commission, 243 Ky. 167, 47 S. W. (2d) 925, and Havemeyer v. Coleman, 243 Ky. 194, 47 S. W. (2d) 1050, the opinions in which followed the case of First National Bank of Boston, Ex'r, etc., v. State of Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, in which the federal Supreme Court held that a state could not discriminate against nonresidents in the levying and collecting of inheritance taxes and that a statute providing for such a tax, which did not operate equally upon property of nonresidents and that of residents, was so discriminatory as to con-

travene the equal protection clause (Amendment 14, section 1) of the federal Constitution.

Before those opinions were rendered, and following decedent's death, the state tax commission of Kentucky demanded of plaintiffs as her representatives the sum of $521.93 as the amount of inheritance tax due from decedent's estate according to the rate prescribed in the section of the statutes supra (4281a-8), and they paid that amount under expressed protest. They so stamped the certification made to them for that amount, and also wrote the words, "Paid under protest," upon the voucher they sent to the state tax commission when the amount was paid, and in an accompanying letter they also stated that the payment was made "Under Protest," upon the ground that the statute under which it was collected was unconstitutional and void. Since the rendition of the opinions supra, this action was filed in the Franklin circuit court by the personal representatives of decedent's estate against defendant, the auditor of public accounts for the commonwealth, for a mandatory writ requiring him to draw his warrant upon the state treasurer for the amount they so paid, and in their petition they alleged the facts that we have recited with the further averment that they had repeatedly demanded and requested defendant for such refund and that he refused to make it. They filed with their petition a number of exhibits, among which were some letters from the state tax commission indicating its determination that the tax paid by plaintiff was valid and collectible and that the statute under which the levy was made was legal and constitutional.

Defendant demurred to the petition, which the court overruled, and he then filed an answer in which he denied that the *proper* protest was made at the time of the payment of the taxes and, furthermore, averred that the amount so claimed by plaintiffs was paid by them in June, 1930, and at the end of that month distribution thereof was made by defendant, in accordance with the provisions of section 4019 of the same Statutes, to the University of Kentucky, and the other schools to which the fund was appropriated, and that they had expended it, and that it was not now in the possession of the defendant, and that there was no statute making an appropriation for such a contingency. Plaintiffs' demurrer filed to that answer was sustained, and defendant de-

clining to plead further, a mandatory writ issued as prayed for in the petition, and to reverse that judgment defendant prosecutes this appeal.

In the case of Talbot v. Charlton's Ex'r, 247 Ky. 568, 57 S. W. (2d) 519, which was one to obtain the same relief sought in this case, we interpreted subsection 4 of section 4281a-5 of our Statutes, supra, to provide for a statutory protest upon the payment of such taxes, and if complied with the nonresident payor might subsequently recover the amount paid; but if that subsection was not complied with at the time of payment no subsequent recovery could be had. Prior to that opinion we had held that the payment of illegally demanded taxes under other statutes, not expressly providing for a payment under a statutory protest, could not be recovered, although a formal protest was made; but in that opinion (Charlton Case) it was likewise pointed out that in the case of Coleman, Auditor, v. Consolidated Realty Company, 239 Ky. 788, 40 S. W. (2d) 387, it would be competent for the Legislature by a "statutory provision" to provide for a payment *under protest,* and when followed a payment made in compliance therewith should be refunded upon demand, if the statute under which it was made was for any reason invalid. In the Charlton opinion there was no protest of any character and we held that the plaintiff therein was not entitled to the relief sought, which, we repeat, was the same as that sought in this case.

But, it will be noted that the petition in this case alleged that plaintiffs protested against the payment of the taxes demanded of them and paid the amount under the same protest with the view of later recovering it upon the final test of the validity of the statute under which the collection was made, if it should be held as invalid. But learned counsel for defendant insist in their brief that the statutory protest embodied in subsection 4, supra, of section 4281a-5, requires a certification from the state tax commission of the amount that should be refunded before the auditor is authorized to make the refund, and language is found in that subsection requiring such a process. But, clearly, it applies only to a case of an *excessive* collection due to an overvaluation of property liable for the tax and which upon reconsideration of revaluation its taxable value is decreased. Under such circumstances the statute re-

quires a certificate from the state tax commission showing such decreased value of the property and the amount of the refund due to the taxpayer by reason thereof. It could not possibly have application to a case where there were *no* taxes due upon the property upon which it had been collected because of the invalidity of the statute levying it. The right to retain the taxes paid under such latter circumstances is not dependent upon the valuation of the property upon which the amount paid was fixed, but upon the validity of the statute giving the right of the commonwealth to collect any amount whatever, and where none of the amount so paid was collectible it cannot be contended that any excess amount of tax has been paid, and for which a refund might be obtained under the provisions of the statute. In such event the whole of it was wrongfully paid, and in which case the auditor of public accounts needs no certifications from the state tax commission to evidence the correct refund amount, since in that event the entire payment should be refunded because the state never had the right to collect any of it, regardless of the value of the property. We, therefore, conclude that the defense under consideration was properly held by the trial court to be without merit.

The second defense must share the same fate. The same subsection of the Statutes (4 of section 4281a-5) expressly provides that such refunds shall be made by the auditor "out of any inheritance tax money in his possession." It does not require that the amount paid, or any part of it, shall be impounded and redelivered to the payor if it should be subsequently determined that he was entitled to the whole or any part of it; the only requirement being that he shall make payment out of any inheritance tax in his possession, and which he has not distributed according to law. The answer in this case does not state that at the time of its filing there was no inheritance tax fund in the hands of defendant. In the absence of such a showing it becomes unnecessary for us to determine what would be the remedy of plaintiff, or the rights of the parties, in cases where there was no such tax fund in the possession of the auditor. If he has in his possession any such fund at the time payment is demanded of him, or required of him by order of court, it then becomes his duty to issue his warrant againts that fund which will necessarily have

the effect to reduce the amount to be later distributed among the beneficiaries thereof, since their right to the fund is subordinate to that of a payer of the taxes who paid his proportion thereof illegally and without the right of the commonwealth to collect it, accompanied with the proper protest.

It, therefore, is our conclusion that the judgment appealed from was and is proper, and it is affirmed.