Jennie J. CLAY et al., Appellants,

v.

Anne Duncan CLAY, Executrix, et al.,
Appellees.

Court of Appeals of Kentucky.

Dec. 5, 1957.

William T. Baldwin, Paris, for appellants.

Bradley & Blanton, Paris, for appellees.

SIMS, Judge.

The question for decision is whether or not the interest in land of contingent infant remaindermen can be mortgaged to satisfy the debts of testator and the cost of administration. There is no dispute in the facts and this appeal presents the sole question of the authority of the circuit court to approve the mortgaging of real estate by the guardian of infant contingent remaindermen to pay the debts of their ancestor where such mortgages would be to the best interest of the infants. The trial judge after hearing proof adjudged it was to the best interest of the infants that the lands be mortgaged and approved their guardian joining in the mortgages for the purpose of paying the ancestor's debts aggregating about $142,000.

Douglas K. Clay died testate on July 28, 1955, the owner of three valuable farms located in Bourbon County aggregating slightly over 1,200 acres. He was survived by his widow, Anne Duncan Clay, and two sons, Douglas, Jr., and John Buchanan Clay. Douglas, Jr., married Jane Clark Clay and they have no children. John married Jennie J. Clay and they have two children, Sally Anne and Jane B. Clay, both infants under 14 years of age and their mother is their statutory guardian.

Testator devised one farm to his wife for life with remainder to Douglas, Jr., for life with a remainder in fee to the heirs of his body. But in the event Douglas, Jr., dies before the death of his mother without leaving children or descendants surviving him, then the farm is devised to the widow in fee.

Testator devised another farm to Douglas, Jr., for life with a remainder in fee to the heirs of his body, but provided if Douglas, Jr., predeceases his mother without leaving children or descendants, then she takes the fee to this farm.

The third farm was devised to John for life with remainder in fee to the heirs of his body, but if John dies without heirs of his body and Douglas, Jr., is living, then this farm goes to Douglas, Jr., for life with remainder to the heirs of his body. In the event both John and Douglas, Jr., die prior to the death of their mother without either leaving heirs of their body surviving them, then this farm goes to the mother in fee.

The federal estate taxes, the state inheritance taxes, proven claims against the

estate, and the cost of administration amount to $142,000 in round figures. Anne Duncan Clay, widow and executrix, Douglas, Jr., and wife Jane, and John Clay brought this action against Jennie, the wife of John, as the guardian of their two infant children, Sally Anne and Jane B. Clay, and against Jennie individually and against Sally Anne and Jane B. individually, as infants. In the complaint herein the facts set out above were pleaded. The complaint averred there was no personal property to satisfy the indebtedness of testator and the federal and state taxes were liens on the three farms devised, which farms were indivisible and separately owned and no one of which could be sold to satisfy the indebtedness against the estate. It was further averred in the complaint that arrangements had been made with the Metropolitan Life Insurance Company and the Federal Land Bank to borrow sufficient funds to pay the indebtedness against the estate upon mortgages on the three farms joined in by all the devisees, including the infant remaindermen acting through their guardian.

The court was asked to approve the guardian mortgaging the interest of the infant contingent remaindermen as such mortgages were for the best interest of the infants. Upon proof being heard the trial judge found it supported the averments in the complaint and he approved the mortgages to the Insurance Company and to the Land Bank.

As said at the outset of this opinion, there is no contrariety in the facts and the sole question raised on this appeal is whether or not the court has authority to approve a mortgage on real estate to pay debts, cost of administration and taxes owed by their ancestor, where under the will some of the devisees are infant contingent remaindermen.

This action was brought under KRS 389.-010(13) which reads:

"Without previous judicial proceeding or judgment the guardian of an infant or the committee of a person of unsound mind may sell privately or at public auction and convey any interest in real estate owned by a ward for such reasons and purposes and upon such terms and conditions as he shall deem best for the interest of said ward. Provided, however, that no such sale shall be consummated until same shall have been approved by the judge of the circuit court in the county where the land or a portion thereof is situated in a suit in equity filed by the guardian or committee against said infant or person of unsound mind. The petition shall set forth the reason and purposes of the sale and the terms thereof."

Here, by far the greatest part of the ancestor's indebtedness is represented by taxes owed the state and the federal governments, which taxes are liens upon these farms. By permitting the guardian to mortgage the interest of the contingent remaindermen in these three farms, the trial judge merely allowed the guardian to substitute liens due in the future for those now due and pressing for payment. These mortgages will not increase the amount of the indebtedness of the estate one penny, but will prevent the farms from being sold immediately, and possibly at a sacrifice. Patently, the trial judge's ruling is to the best interest of the infants and follows the spirit of KRS 389.010(13), as well as the principles of justice and equity.

The instant case is much like that of B'Hymer's Guardian, etc., v. B'Hymer, 257 Ky. 10, 77 S.W.2d 411, where we sustained the ruling of the trial judge approving the mortgaging of infants' real estate to pay the debts of their ancestor. Mark v. Mark, 313 Ky. 536, 233 S.W.2d 100, at page 102, in following the B'Hymer opinion pointed out that the statute was intended to make more simple the sale of real estate of infants than the procedure under the then Civil Code of Practice, §§ 489–491. We said in the Mark opinion that the right to sell infants' real estate to satisfy their ancestor's indebtedness includes the right to mortgage

same. We there called attention to Wadlington's Guardian, etc., v. Wadlington, Guardian, 257 Ky. 15, 77 S.W.2d 357, wherein we sustained the trial judge in approving the mortgaging of infants' real estate to pay their ancestor's indebtedness, but refused to approve that part of the judgment wherein the trial judge permitted to be included in the mortgage $1,900 the administrator had expended in maintaining and educating the infants. Thus, we have strictly construed the statute permitting the guardian to mortgage an infant's interest in real estate.

Hay's Committee v. Hay's Guardian 260 Ky. 586, 86 S.W.2d 313, is not in conflict with the Wadlington opinion. In the Hay opinion we held the committee of an insane woman might mortgage the incompetent's real estate to pay off a mortgage she placed thereon while she was sane, as no new indebtedness was involved in the transaction which merely substituted a long-term debt for one that was pressing.

Appellants put their sole reliance in Vittitow v. Keene, 265 Ky. 66, 95 S.W.2d 1083, but the facts in that case distinguish it from the instant one. There, the action was brought under § 491a of the Civil Code of Practice (now KRS 389.040) for the sale of a contingent interest in real estate and reinvestment of the proceeds in the same kind of property. None of the parties to the Vittitow action appears to have been infants or persons under disability, and we held the trial judge had no authority to approve a private sale of the real estate there involved and that same must be sold at a decretal sale. The Vittitow opinion shows we strictly construe the statute permitting the private sale of the real estate of infants upon the approval of the circuit court. And as above stated, such sale as provided by the statute includes the mortgaging of real estate of infants to pay the indebtedness of the ancestor, including cost of administration.

The judgment is affirmed.